WILLIAM H. WINDOLPH ET AL., APPELLANTS, v. WILLIAM J. LIPPINCOTT ET AL., RESPONDENTS.

Argued October 28, 1930—Decided May 18, 1931.

For the appellants, *Philip Wendkos.*

For the respondents, *Bleakly, Stockwell & Burling.*

The opinion of the court was delivered by

CAMPBELL, J. These are appeals from judgments in two actions at law in which the plaintiffs below, as purchasers, sought to recover what is known as "down-money" on moneys paid on account of an agreed purchase price under certain reputed contracts for the sale of lands. In each case a portion of the consideration was to be paid by means of a mortgage, which under paper-writings purporting to be contracts were to be to "the parties of the first part" who were the sellers. This was changed in each case before the sellers executed the papers but after the purchasers had done so. In one case this was done by adding "William J. Lippincott" so that the paper then read that the mortgage was to run to William J. Lippincott, one of the said parties of the first part, and the other paper was changed by adding "Laura Evans" so that it read that the mortgage should run to Laura Evans, one of the parties of the first part.

The purchasers not having taken title under such purported contracts, the vendors brought suits in chancery for specific performance and, after hearing, the bills of complaint were dismissed.

The decrees of dismissal were consented to by counsel for all the parties and contained the following recitals: that the vendors had tendered to the vendees an instrument in writing, not executed by the vendors, whereby the vendors agreed to convey to the vendees certain lands, and, the vendees had on December 15th, 1925, executed such instrument in writing and submitted the same to the vendors for the purpose of having the same executed by them, and accompanied delivery of such written instrument with the payment of the sum called for as the first payment; "and it further appearing to the satisfaction of the court that the aforesaid instru-

ment was altered while in the possession of the complainants [vendors] by the interlineation at their request * * * of the words * * * without notifying the defendants [vendees] herein of complainants' intention to make such alteration and without notifying said defendants after the making of the aforesaid interlineation by the complainants before the complainants had executed the aforesaid contract;" "and it further appearing that the aforesaid interlineation had been made by complainants without the knowledge and consent of the defendants and that said alteration had not been adopted by the defendants, and that the defendants had not been made acquainted with the aforesaid alteration by the complainants after the complainants had made the change, which alteration is in a material part of the contract;" "and the court being of the opinion that the aforesaid instrument in writing, by reason of the aforesaid alteration made in the manner above described, is not the same contract which the defendants, as vendees, signed, and is not available to complainants as evidence of the contract made between the parties hereto for the sale and purchase of the lands above described;" and then adjudged and ordered as follows: "Ordered, adjudged and decreed, that the aforesaid instrument be declared of no effect and be annulled by reason of the material alteration made by the complainants in the manner above set forth, as means of evidence of a contract made by the parties hereto for the sale and purchase of lands above described." From these decrees appeals were taken to this court and the decrees were affirmed. 103 *N. J. Eq. 275.*

Subsequently, the suits in question were brought, upon the theory that the purchasers had paid certain moneys, known as "down-moneys" to the sellers, under a written offer to purchase which had not been accepted, and that the decrees in chancery dismissing the bills of complaint in the specific performance proceedings and the judgment of this court in affirming such decrees were *res adjudicata* upon the question that there was no existing, legal contract between the parties.

To the complaints filed in these proceedings at law, the defendants, vendors, filed several answers, which, in part,

were stricken out upon motion. However, issues were raised and the causes presented to the jury, by the trial court, upon the theory that if the alleged contracts in their modified form were assented to and ratified by the plaintiffs, vendees, they became binding contracts, and this notwithstanding the decrees in the chancery proceedings and the affirmance thereof by this court.

The theory upon which the causes were submitted to the jury is more exactly presented by the following excerpt from the charge of the trial judge: "as they [the purported contracts] were not accepted as submitted—that is, accepted now by the vendors, the owners, as they were not accepted as submitted, but on the contrary were altered in one of their clauses, then there was no contract between the parties unless the plaintiffs assented to the alteration either at the time that the agreements were returned to them or subsequently assented to or ratified by them, either expressly or by their acts or course of conduct. Whether there was such an assent or ratification is the question submitted to you for your decision, and that decision must be based upon the evidence as to what was done and said by the parties after the writings had been signed by all of them."

The trial of the causes resulted in verdicts in favor of the defendants (vendors), and from the judgments entered thereon the plaintiffs below (vendees) appeal.

There are several grounds of appeal but, we think, there are only two of them requiring our consideration and they are:

1. That the decrees in chancery, affirmed by this court, are *res adjudicata;* and

2. There was no contract between the parties.

Upon the appeal from the decrees in chancery dismissing the bills of complaint in the specific performance proceedings, this court, in its opinion, upon which it affirmed such decrees, said in part as follows: "The appellants [vendors] argued before the vice-chancellor that as the several manifold originals of the paper signed by the complainants [vendors], after the change had been made, delivered to the several defendants

[vendees] and accepted by them without objection, they must be deemed to have assented to them; and that, even though they knew nothing of the matter for some time afterwards, running into months in some cases, retention of the paper after discovery, without repudiation, spelled acceptance. The further point is made here, though apparently not made below, that Bitting, the go-between, who went back and forth between the several parties, was the agent of the defendants [vendees] and that his knowledge of the change, at the time it was made, was theirs and, hence, they were bound by it. All this we deem too uncertain and nebulous to support a decree for specific performance at the instance of a vendor. * * * On this branch of the case, therefore, we conclude that the proof touching assent of the defendants to the paper, in its modified form, is insufficient to sustain a decree." And then the opinion of this court proceeds: "This brings us to the fundamental ground for denial of the aid of the court; and, as we view it, that ground is the non-existence of any complete contract. * * * Of course, there was an alteration of the paper in the ordinary and physical sense; but as we understand the matter, alteration, in the legal sense, relates wholly to the change in some feature of a paper already legally complete. * * * The present case is not in this class, but, as we view it, comes under the elemental rules that the bargain or promise to be enforced, whether written or oral, must have been completely determined between the parties and its terms definiteley ascertained. * * * *Tested by these rules there was no contract between the parties.*"

The only reasonable conclusion is, therefore, that both the Court of Chancery and this court definitely determined that there was no contract between the parties.

In *Hoffmeier et al.* v. *Trost,* 83 *N. J. L.* 358, citing *Mershon* v. *Williams,* 63 *Id.* 398, it is held that a matter is not *res adjudicata* unless there be identity of the thing sued for, of the cause of action, of the persons and parties, the quality of the persons for and against whom the claim is made and the judgment in the former action be so in point as to con-

trol the issue in the pending one, and, that a proper test in determining whether a prior judgment between the same parties concerning the same matters is a bar to a subsequent action, is to ascertain whether the same evidence which is necessary to sustain the second action would have been sufficient to authorize a recovery in the first; if so, the prior judgment is a bar. But if the evidence offered in the second suit is sufficient to authorize a recovery, but could not have produced a different result in the first suit, the failure of the plaintiff in the first suit is no bar to his recovery in the other suit.

Measured by this rule the judgment and finding of this court, before referred to, most conclusively settled the issue between the parties because the unqualified and definite finding was that there was no contract existing between them. That being so, the plaintiffs were entitled to have, in their actions in the court below, a return of the moneys which they paid to the defendants below, for the reason that the defenses relied upon, and urged by them, were not available to them, because they had been definitely settled against them by the decrees in chancery and the judgments of affirmance of this court before referred to.

The respondents urge that the decrees in Chancery and the judgments of this court affirming such decrees are not dispositive of the issue because, in actions for specific performance, a decree of the Court of Chancery therefor is within the judicial discretion of the court.

This is so, and it has been repeatedly held that the Court of Chancery will not make a contract for the parties and then require and decree specific performance of it. But, in the matter before us, there was a direct and definite contest between the parties, both in the Court of Chancery, and in this court, as to contract or no contract, and defendants-respondents, the vendors, did, in the Court of Chancery, as appears in the recitals in the decrees of that court, hereinbefore quoted, bring forth the same proofs as they did in their present actions at law, or could have done so, in order to support their contention that a contract did exist between

the parties. Whether they did so, or not, or if they did so, in part, but not to the full extent that they might have done, or did do, in the present actions at law, is beside the question. They could have done so. The issue decided in the Court of Chancery and in this court, as before stated, was that there was no contract between the parties and that was definitely and finally dispositive of that question.

The judgments under review must, therefore, be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.